Jack Shaw (Bar No. 309382)
Email: jack.shaw@procopio.com
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
3000 El Camino Real, Suite 5-400
Palo Alto, CA 94306
Telephone: 650.645.9019
Facsimile:  650.687.8326

Jacob K. Poorman (Bar No. 262261)
E-mail:    jacob.poorman@procopio.com
PROCOPIO, CORY, HARGREAVES &
    SAVITCH LLP
12544 High Bluff Drive, Suite 400
San Diego, CA 92130
Telephone: 619.238.1900
Facsimile: 619.235.0398

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE NEXT VIETNAM PROJECTS FOUNDATION, INC.; RADIX CORPORATION A/K/A VIETNAM VETERANS FOR FACTUAL HISTORY; SAIGON BROADCASTING TELEVISION NETWORK, INC.; MY VAN INTERNATIONAL, INC.; NAM PHAM; CARINA OANH HOANG; DIEP PHAN; TRONG PHAN; SON NGUYEN; THANH-MAI NGUYEN and MINH NGUYEN,<br><br>    Plaintiffs,<br><br>v.<br><br>KOSTER FILMS, LLC; FREDERICK KOSTER; BT PRODUCTION, LLC and BRIAN TOOKER,<br><br>    Defendants. | C.A. No. 8:22-cv-2130<br><br>**COMPLAINT FOR:**<br><br>1) **COPYRIGHT INFRINGEMENT;**<br>2) **BREACH OF CONTRACT;**<br>3) **FRAUD;**<br>4) **MISAPPROPRIATION OF LIKENESS;**<br>5) **CONVERSION;**<br>6) **DECLARATION OF COPYRIGHT INVALIDITY;**<br>7) **UNJUST ENRICHMENT** |

Plaintiffs, by and through their attorneys, for their complaint against defendants

Koster Films, LLC, Frederick Koster, BT Production LLC, and Brian Tooker

(collectively, "Defendants") hereby allege the following:

---

COMPLAINT

## INTRODUCTION

1.      Frederick Koster and Koster Films, LLC ("Koster Films") (collectively, "Koster") were hired to work on a feature documentary film entitled "Through Our Eyes – The Vietnam War" (the "Film") focusing on the Vietnam War from the South Vietnamese perspective.  During discussions about the Film, Koster promised and agreed, among other things, that (1) the Film would be distributed for free for educational purposes, (2) all rights to the Film and related materials (including the at least ninety-three [93] interviews of Vietnamese refugees and others conducted as a part of the making of the Film [the "Interviews"]) would belong to the "Vietnamese People" in the form of Plaintiff The Next Vietnam Projects Foundation, Inc. (the "Next Vietnam Foundation") and (3) Plaintiffs would have final approval over the content of the Film.  In exchange, and in reliance on Koster's promises, Plaintiffs Radix Corporation aka Vietnam Veterans for Factual History ("VVFH"), Saigon Broadcasting Television Network, Inc. ("SBTN") (collectively, the "Producers"), paid Koster approximately $300,000 that they raised, primarily, from small, individual donations from thousands of members of the Vietnamese refugee community in the United States and worldwide.

2.      Plaintiffs, however, have come to learn that this was, effectively, a scam by Koster.  After having pocketed the $300,000, Koster, along with Defendants BT Production LLC and its principal Brian Tooker, have attempted to sell the Film and Interviews for profit, and have asserted exclusive rights to them, in breach of the agreement and contrary to Koster's promises.  Of even greater concern is that, while Koster walked away with Plaintiffs' $300,000, Plaintiffs do not even have the Film, or the Interviews, to show for it because Defendants have refused to turn them over.  Defendants' attempt to monetize, and refusal to furnish Plaintiffs with, the Interviews – which Frederick Koster himself described as a unique and "magnificent library of the history of the South Vietnamese people" – is particularly egregious and unconscionable.

132231-00000001/6354198.7

3.     Koster also misappropriated the likenesses of individuals who appeared in the Film.  Individual Plaintiffs Mr. Nam Pham ("Mr. Pham"), who is the President of the Next Vietnam Foundation and acted as a representative of the Producers, along with Dr. Oanh Thi Hoang, also known as Dr. Carina Oanh Hoang ("Dr. Hoang"), Mr. Diep Phan ("Mr. D. Phan"), Dr. Trong Phan ("Dr. T.  Phan"), Mr. Son Nguyen ("Mr. S. Nguyen"), Ms. Thanh-Mai Nguyen ("Ms. T. Nguyen"), and Ms. Minh Nguyen ("Ms. M. Nguyen") (referred to collectively herein as the "Individual Plaintiffs") agreed to appear in, and lend their likenesses to, the Film without compensation based on Koster's representations that they would have final approval over their appearances, that the Film would be distributed for free, for educational purposes, and that the Film and all right, title and interest therein would belong to the Next Vietnam Foundation. Defendants, by refusing to give the Individual Plaintiffs approval over their appearances, by attempting to commercialize the Film, and by refusing to convey the Film or the rights thereto to the Next Vietnam Foundation, have used the Individual Plaintiffs' likenesses without their consent and thereby misappropriated them.

4.     In addition, Defendants have infringed Plaintiffs' copyrights, and have wrongfully asserted copyrights in the Film.  Plaintiff My Van International, Inc. ("My Van"), which holds the copyrights for the two films From Saigon to Dien Bien Phu (Registration Number Pau000434758) and Chan Troi Tim (aka The Purple Horizon) (Registration Number Pau000434760), gave permission for the use of footage from those films for the Film, under the condition that the Film be distributed for free, for educational purposes, that the Next Vietnam Foundation would hold rights to the Film, and that Plaintiffs would have final approval over the content of the Film.  Defendants, by using the My Van footage in a way that exceeded their permission, have infringed My Van's copyrights.  Moreover, Defendants have wrongfully asserted copyrights in the Film and have registered a copyright therefore identifying themselves as the exclusive authors of the Film, despite their use of My Van's footage, despite the substantial contributions of Plaintiffs to the Film, and despite their contractual

132231-00000001/6354198.7

obligation to assign rights in the Film to the Next Vietnam Foundation.

5.    This is an action for copyright infringement, breach of contract, misappropriation of likeness, fraud, conversion, declaration of copyright invalidity, and unjust enrichment.    Through this action, Plaintiffs seek monetary damages, declaratory relief, and injunctive relief to stop Defendants' continuing wrongdoing and remedy the harm they have caused.

6.    The harm to the Plaintiffs and the general public will continue unless Defendants' conduct is enjoined by this Court.    Monetary damages are insufficient to compensate Plaintiffs fully for these harms.    Accordingly, Plaintiffs are entitled to preliminary and permanent injunctive relief.

## THE PARTIES

7.    Plaintiff the Next Vietnam Foundation is a nonprofit corporation duly organized and existing under the laws of the State of Massachusetts with its principal place of business in Quincy, MA.    The Next Vietnam Foundation is dedicated to representing the interests of the Vietnamese people and to sharing the compelling story of the South Vietnamese people through film and teaching aids provided free of charge to the public and educational institutions.    More specifically, and among other things, the Next Vietnam Foundation was created in order to hold all title, right and interest in the Film.

8.    Plaintiff Saigon Broadcasting Television Network, Inc. ("SBTN") is a corporation duly organized and existing under the laws of the State of California with its principal place of business in Garden Grove, CA.    SBTN is a 24-hour Vietnamese language television channel targeted at Vietnamese audiences living outside of Vietnam.

9.    Plaintiff My Van is a corporation duly organized and existing under the laws of the State of California with its principal place of business in San Jose, CA.

10.    Plaintiff RADIX Corporation aka Vietnam Veterans for Factual History ("VVFH") is a nonprofit corporation duly organized and existing under the laws of the

COMPLAINT

State of Texas with its principal place of business in Houston, TX. VVFH's mission is to provide facts from professional historians, eyewitnesses and participants in the Vietnam War to ensure the accuracy of the historical record of the War.

11. Plaintiff Mr. Pham is an individual who resides in Quincy, MA. From 2015 – 2020, Mr. Pham served as the Assistant Secretary for Business Development and International Trade for the Commonwealth of Massachusetts. Mr. Pham has studied the Vietnam War for forty (40) years, and taught a course entitled "Vietnam War from the South Vietnamese Perspective" at Tufts University. A true and correct copy of Mr. Pham's declaration (the "Pham Declaration") is attached hereto as **Exhibit A** and is incorporated herein by reference.

12. Plaintiff Dr. Hoang is an individual who resides in Australia. Dr. Hoang is an Ambassador of the United Nations High Commissioner for Refugees and holds a doctorate degree from Curtin University, Australia. Dr. Hoang is an author/publisher, and published the book Boat People: Personal Stories from the Vietnamese Exodus, for which she won a 2012 Independent Publisher Book Award. A true and correct copy of Dr. Hoang's declaration is attached hereto as **Exhibit B** and is incorporated herein by reference.

13. Plaintiff Dr. T. Phan is an individual who resides in in Dallas, Texas. Dr. T. Phan worked for thirty-three (33) years for the Department of Defense in the civilian service corps before his retirement as a GS-15 (equivalent to the rank of Colonel). Dr. T. Phan is also a host of a radio program on Dallas Radio and SBTN. A true and correct copy of Dr. T. Phan's declaration is attached hereto as **Exhibit C** and is incorporated herein by reference.

14. Plaintiff Mr. D. Phan is an individual who resides in in Westminster, CA.

15. Plaintiff Mr. S. Nguyen is an individual who resides in Westminster, CA. A true and correct copy of Mr. S. Nguyen's declaration is attached hereto as **Exhibit D** and is incorporated herein by reference.

16. Plaintiff Ms. T. Nguyen is an individual who resides in Westminster, CA.

17.     Plaintiff Ms. M. Nguyen is an individual who resides in San Jose, CA.  A true and correct copy of Ms. M. Nguyen's declaration is attached hereto as **Exhibit E** and is incorporated herein by reference.

18.     Koster Films is an Arizona Limited Liability Company and is a member of the Motion Picture and Video Industries.  Koster Films lists an address in Anthem, AZ and, on information and belief, has substantial operations in Los Angeles, California.

19.     Defendant Frederick Koster is, on information and belief, an individual who resides in Phoenix, Arizona area, and is a principal of Koster Films.

20.     Defendant BT Production LLC (or BT Productions) is, on information and belief, an Arizona Limited Liability Company that holds itself out as a "one-stop multimedia company specializing in video and media production."  On information and belief, BT Productions is located in Chandler, AZ and has substantial operations in Los Angeles, California.  A true and correct copy of BT Productions' website identifying offices in Los Angeles and Phoenix is attached hereto as **Exhibit F** and incorporated herein by reference.

21.     Defendant Brian Tooker ("Mr. Tooker") is, on information and belief, a resident of Chandler, Arizona and a principal of BT Productions.

22.     On information and belief, at all relevant times, each Defendant acted in concert with each other Defendant, each Defendant is the alter-ego of each other Defendant, each Defendant is an agent of each other Defendant, and each Defendant acted within the course and scope of that agency.

## JURISDICTION AND VENUE

23.     This is a civil action seeking damages, injunctive relief, and other equitable relief under the laws of the State of California.

24.     Venue is proper in this judicial district under 28 U.S.C. § 1391(c) and 28 U.S. Code § 1400 in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

132231-00000001/6354198.7

25.    This Court has subject matter jurisdiction under 28 U.S.C. § 1338(a) and 28 U.S.C. § 1332.

26.    This Court also has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

27.    This Court has personal jurisdiction over the Defendants.  This Court has specific personal jurisdiction over Defendants because Plaintiffs' causes of action arise out of or relate to Defendants' purposeful contacts with California, including filming in California in Los Angeles, Garden Grove, Huntington Beach and Santa Ana, making material misrepresentations in California, negotiating with California entities and individuals, entering into an agreement with California entities, and misappropriating the likenesses of California residents.  Plaintiffs also have general personal jurisdiction over Defendants because they have engaged in systematic and continuous contacts with the State of California.  Defendants held themselves out to Plaintiffs as "Hollywood" producers.  Koster and BT Productions/Tooker have also represented that they have substantial operations in Los Angeles, and BT Productions represents to the public that one of its two offices are located in Los Angeles.  The exercise of personal jurisdiction over the Defendants in this particular case would comport with principles of fair play and substantial justice.

## STATEMENT OF FACTS

28.    In approximately October 2017, the Immigrant Resettlement and Cultural Center ("IRCC") contacted Mr. Pham, an expert on the Vietnam War, and asked him to lead a documentary project focusing on the Vietnam War from the perspective of the South Vietnamese people.

29.    In January 2018, after Mr. Pham discussed the project with members of the IRCC, VVFH, SBTN, and My Van, the Producers decided to move forward with the project and contacted Mr. Koster to gauge his interest in working as a director on the project.

30.    The Producers became aware of Mr. Koster because of his work on

another film about the Vietnamese community, "Ride the Thunder," based on a book written by Mr. Richard Botkin ("Mr. Botkin").  Unbeknownst to the Producers at the time, Mr. Koster never provided Mr. Botkin with the original copy of the movie.  Also unbeknownst to the Producers at the time was that they were a few years away from being in a similar position, with Mr. Koster holding the Film hostage.  A true and correct copy of Mr. Botkin's declaration is attached hereto as **Exhibit G** and is incorporated herein by reference.

31.    During discussions with Mr. Koster in 2018, Mr. Koster agreed to make two videos about the Vietnam War, each forty-five to sixty minutes long – one from the perspective of the citizens of the Republic of Vietnam (South Vietnam), and one from the perspective of American Vietnam veterans.  The first video would be completed by June 2019 with the second one to follow.  According to Mr. Koster, the cost of making these two videos would be $80,000.  In addition to the two videos, Mr. Koster also agreed to create teaching materials to accompany the videos, to create and maintain a website called "Through Our Eyes" exclusively for the project, and further agreed that the website would be a repository for all of the interviews of the Vietnamese community members and Vietnam War veterans interviewed for the videos.

32.    During these discussions, Mr. Koster held himself out as someone who had extensive knowledge about Vietnamese culture and history, including the Vietnam War.  This was false.  Moreover, during these discussions (for which Mr. Tooker was present), Koster represented and agreed that the videos he created would be distributed for free through the website, that the Producers would have final approval over the content of the videos to ensure historical accuracy, and that all rights in the videos and related materials would belong to the Next Vietnam Foundation.  During these meetings, it was specifically discussed and agreed among Koster and the Producers that the Next Vietnam Foundation would be created, in part, in order to hold possession of, and rights to, the videos.  The Producers ultimately agreed to hire Koster in reliance

on these representations.  For their part of the Agreement with Koster, the Producers agreed to fund the project, to connect Koster with potential interviewees, and to provide additional historical and musical materials for the videos.

33.   Because the project was intended to educate the public and to correct what the Producers believed were various misconceptions regarding South Vietnam and its people, the historical accuracy of the project was critical.

34.   The website Koster created and maintained explained that the project would provide "all produced videos, products and materials FREE of charge to academic institutes and also to the public," and solicited donations based on that representation. *See* Nam Declaration, Exhibit 3.

35.   The Producers and their members provided Koster with historical footage, personal pictures, lists of Vietnamese songs, and recorded music as well as contact information for popular and famous Vietnamese composers.  All individuals who provided the historical footage, personal pictures, and music did so under the condition that they would be used for educational purposes only, and with the understanding that an organization representing the Vietnamese community would have ownership over any work created using the materials provided.  Among the footage that was provided were clips from the films From Saigon to Dien Bien Phu and Chan Troi Tim (aka The Purple Horizon), which were donated by Plaintiff My Van, the holder of the copyright registrations for both films, respectively.

36.   Mr. Koster confirmed his retention as director in a January 15, 2018 email to Mr. Pham and others stating he was "excited to be part of this project." *See* Nam Declaration, Exhibit 1.

37.   Pursuant to the parties' discussions and agreement, initially VVFH would act as a fiscal agent while a new non-profit entity, the Next Vietnam Foundation, would be established to formally own any and all rights in the documentaries, interviews, and all related materials.

38.   On March 16, 2018, SBTN taped a sixty-minute interview of Mr. Koster

9

and Mr. Pham in Garden Grove, California.  During the taped interview, Mr. Koster reiterated the representations he had previously made, stating that he was a director for hire, that the entire production, Interviews, and all related materials would belong to the Vietnamese community, and that they would be distributed free of charge to the public and schools across the United States once completed.

39.    Mr. Koster again reiterated these representations during subsequent interviews with SBTN in Garden Grove, California on at least October 28, 2018 and March 16, 2019.

40.    On March 19, 2018, Mr. Koster stated in email that he would "start writing the 'actual' script based on the materials and approval that have been provided to me by all of you.  Please send me any new updates or thoughts." Nam Declaration, Exhibit 4.  After a meeting about the project, on March 20, 2018, Mr. Koster emailed the Producers and explained that "[t]he script for the South Vietnamese video will first be written by SBTN 'based' on our approved outline that we currently have which [Nhi Nguyen] will provide to SBTN.  This script by SBTN will then be sent to IRCC for their input and then sent to Jim and I.  One thing we need to be careful of is, that everyone needs to know that this script is a collaborative effort." *Id*.

41.    From March to October 2018, Mr. Pham arranged for Mr. Koster to interview and film prominent members of the Vietnamese community.  Mr. Koster filmed the interviews using equipment provided by various local non-profits and organizations, which was arranged by Mr. Pham.  Mr. Pham also prepared the interview questions used with each interviewee, including tailoring each set of questions to the specific interviewee's background and experience.  In addition, Mr. Pham acted as interpreter for many of the interviews.

42.    In October 2018, Mr. Pham identified an individual in the Vietnamese refugee community who agreed to help raise additional funds for the project.  With additional financial support potentially on the horizon, Koster then proposed to revise the project to create a feature documentary film for a total cost of $250,000.  *See* Nam

COMPLAINT

Declaration, Exhibit 9. Mr. Koster sent the Producers a proposed budget, which included a 10% contingency for Mr. Koster. *See id*. The proposed budget also included line-item costs for the script, archival research, travel (including to Los Angeles, CA and San Jose, CA), and equipment costs. *See id*. The budget also contemplated a twenty-week schedule for completing the Film. *See id*. Koster represented, and the parties agreed, that the Film would be made and distributed under the same terms as the initially-conceived videos, i.e., that the Film would be distributed for free for educational purposes, that all rights to the Film would belong to the Next Vietnam Foundation, and that the Producers and the Next Vietnam Foundation would have final approval over the content of the Film.

43.    On March 9, 2019, Mr. Koster and Mr. Pham were invited to meet with two dozen Vietnamese religious, civic, and business community members in Houston, TX to present the proposal to produce the documentary Film as part of an effort to raise funds for the Film. At this meeting, Mr. Koster again repeated his promise that the Film would be an educational documentary and would be distributed free of charge to the Vietnamese Community through the Next Vietnam Foundation.

44.    Despite promising to do so, Mr. Koster never provided the Producers with a movie script. On March 13, 2019, more than a year after the start of the project and still without a script, Mr. Pham requested a script from Mr. Koster. A true and correct copy of the March 13, 2019 email to Mr. Koster is attached hereto as **Exhibit H** and incorporated herein by reference. Mr. Koster failed to provide any script. On May 13, 2019, at the insistent pressing of Mr. Pham and the Producers, Mr. Koster responded in an email to Mr. Pham stating that he "will get script finished." A true and correct copy of the May 13, 2019 email is attached hereto as **Exhibit I** and incorporated herein by reference.

45.    In or around May 2019, Mr. Pham, Dr. Hoang, Mr. D. Phan, Dr. T. Phan, Mr. S. Nguyen, Ms. T. Nguyen, and Ms. M. Nguyen agreed to participate in the Film under the condition that any use of their likeness would be approved by them prior to

132231-00000001/6354198.7

any release of the Film, that the Film was exclusively for educational use, and that the rights to the Film would be owned by the Next Vietnam Foundation.[1]

46. On August 29, 2019, Mr. Pham again asked Mr. Koster for a copy of the script for a role Mr. Pham was playing in the Film. Mr. Koster, however, provided Mr. Pham with an incomplete script, which Mr. Pham was eventually forced to completely rewrite, and Mr. Pham's re-written version of the script is what was used in the Film.

47. Mr. Koster does not speak any Vietnamese and throughout the film production process showed that he had very little knowledge of Vietnamese culture or history, or the Vietnam War despite his representations to the contrary. For example, on September 8, 2019, Mr. Koster emailed Mr. Pham and asked for a "One Page Summary of History of Vietnam," which would include "the universities that existed a thousand years ago. Architecture. Religion. When the written language was first used. The low crime rate. Family oriented. How Vietnam was constantly invaded throughout the years. Especially from China. Products manufactured like rubber, etc." If Mr. Koster was an expert on Vietnamese culture, history, and the Vietnam War, he should not have needed Mr. Pham to provide him with this information.

48. Mr. Pham also asked Mr. Koster to provide the Producers with copies of the videos of the interviews conducted with members of the Vietnamese community. Mr. Koster promised he would ask the video photographer, Mr. Tooker, to send the videos to the Producers. Mr. Koster never delivered on this promise, despite the fact that he was repeatedly asked to turn over the footage of the Interviews.

49. By August 2019, the Producers had paid Mr. Koster about $220,000 and incurred an additional $20,000 in other direct costs. Even though the Producers repeatedly asked Mr. Koster to provide an actual expense report, he refused.

---

[1] Mr. Koster has contended that that Ms. M. Nguyen signed a release for the use of her likeness in the Film. Mr. Koster, however, specifically represented to Ms. M. Nguyen that that release was required by the United Nations for planned filming at the United Nations in New York (which ultimately did not take place), and that it related only to the use of her image in the contemplated filming at the United Nations.

COMPLAINT

50.    From September 7 through September 10, 2019, Mr. Koster filmed in California, including filming with Mr. Pham, Dr. Hoang, Mr. D. Phan, Dr. T. Phan, Mr. S. Nguyen, Ms. T. Nguyen, and Ms. M. Nguyen.  During conversations with Mr. Koster, he again reiterated his commitment that the Film would be for the Vietnamese community and that he would not hold rights to the Film.  For example, Mr. Koster specifically represented to Ms. M. Nguyen that he would claim not claim ownership of copyrights in the Film.  Mr. Koster expressed his commitment to documenting the stories of Vietnamese refugees and hoped that his efforts on the Film would lead to additional opportunities for him as a hired director for the Vietnamese community.

51.    On information and belief, Mr. Tooker filmed many of the interviews. On information and belief, Mr. Tooker also facilitated the technical implementation of the editing of the Film.

52.    A substantial amount of the filming of the Interviews for use in the Film took place in California.  For example, approximately two days of filming took place in Los Angeles, approximately four days in Garden Grove, approximately three days in Huntington Beach, and approximately two days in Santa Ana.

53.    In October 2019, Mr. Koster contacted two key Vietnamese leaders and contributors in Houston, and threatened to stop working on the Film unless he received an additional $30,000.  Mr. Koster stated that if the Vietnamese community acquiesced to his demand for additional funds, he would complete the Film "before the Holidays" of 2019.

54.    On November 21, 2019, Mr. Koster emailed the Producers and referred to the footage of the Interviews as a unique and "magnificent" "library" that he "created . . . for the Vietnamese people."  Mr. Koster further stated that his "intentions were for a Vietnamese owned and managed non-profit to use these interviews in creating future projects to educate America of their true story."  Yet, in the same email, Mr. Koster demanded an additional $49,398 to be wired to him in order to complete the Film.  He further opined that "this film must be finished immediately and released

132231-00000001/6354198.7

in January," and represented that he would "ensure to everyone that this film will be ready for release in January but only if I am wired [$49,398] by end of the business day on Friday November 22." *See* Nam Declaration, Exhibit 7.

55. At the urging of the Vietnamese leaders and contributors contacted by Mr. Koster, the Producers wired Mr. Koster the $49,398, with the total wired to Mr. Koster up until that point of $268,515. The Producers also had to pay other costs of $30,000 that Mr. Koster claimed to have incurred for a total of almost $300,000, or 20% over his own proposed and approved budget.

56. On November 26, 2019 Mr. Koster acknowledged that he had received the additional funding would resume work on the Film, stating that "we have received the funding and are back to production and we will have a great film." *See* Nam Declaration, Exhibit 8. But, yet again, Mr. Koster failed to meet the January deadline, then set February 2020 as the deadline, and then April 30, 2020, but again failed to meet either of these deadlines.

57. Finally, in April 2020, Mr. Koster sent Mr. Pham and other members of the Vietnamese community the first screener, not a completed version, of the Film. To say that the Foundation, and the Producers, were disappointed would be an understatement. The screener appeared to be a slapdash effort that Koster threw together at the last minute. Most of the screener consisted of footage of Ms. M. Nguyen narrating. The Film had no coherent narrative, used some footage from the Interviews seemingly at random, had no soundtrack, and, critically for a Film that was intended to educate the public, contained glaring historical inaccuracies. For example, there was footage of World War II concentration camps that Koster attempted to pass off as historical footage from the Vietnam War.

58. As a result of discussions at the meeting, the Next Vietnam Foundation and the Producers detailed what was missing from the Film and what would be needed to improve the film. The Next Vietnam Foundation's twenty-five-page explanation to Mr. Koster included sixteen pages of detailed comments identifying specifically the

132231-00000001/6354198.7

content that needed to be revised.  These comments and suggestions included but were not limited to:

- Mr. Koster needed to provide clearly described subtitles or corresponding narrative describing each individual in the Film's name, background, and experience;

- The Film is "fragmented and not well connected . . . [and] the last 30 minutes of the film are not carefully crafted and some interviews shown in this part have little value to the overall purpose" because of the incomplete script;

- There were several examples of mismatch between the topics of the interviews and the supporting picture or video clips, including irrelevant footage of American medics carrying stretchers of wounded soldiers while the speaker is discussing communist re-education camps; and

- It was recommended that Mr. Koster revisit interviews to find more compelling footage and to remove from the Film less compelling or irrelevant footage.

59.    Mr. Koster agreed with most of the suggestions and appeared committed to addressing the Next Vietnam Foundation's concerns.

60.    In the second half of 2020, the board of the Next Vietnam Foundation had at least three video conferences with Mr. Koster during which they gave Mr. Koster very specific recommendations regarding changes for the Film.  In essence, the Producers and members of the board of the Next Vietnam Foundation worked to completely revise the Film.  Eventually Koster created approximately four versions of the screener, but did not address all of the various problems that were present in the initial screener.

61.    In late April 2021, without any notice to Plaintiffs or any of their members or any donors, and in direct contravention of his agreement with the Producers and every representation he ever made about the Film, Koster started to sell

the Film on various online websites, including eBay.com ("eBay"), IMDb.com ("IMDb"), and Vimeo.com ("Vimeo") with prices ranging from $9.99 to $19.99. Koster and BT Productions also claimed all copyrights to the Film, and, indeed, Plaintiffs have subsequently learned that Koster and BT Productions have registered a copyright in the Film identifying themselves as the authors of the entire Film. A true and correct copy of the Copyright Office's record of their registration is attached hereto as **Exhibit J** and incorporated herein by reference. On information and belief, Defendants attempted to sell the Film for profit containing footage of the Individual Plaintiffs, without the Individual Plaintiffs' permission. Moreover, Defendants depicted Ms. M. Nguyen and Mr. Pham in advertisements accompanying their offers to sell the Film.

62. On April 22, 2021, Ms. M. Nguyen, acting as counsel on behalf of the Next Vietnam Foundation and the Producers, emailed a cease-and-desist letter to Mr. Koster, requesting that he remove the unauthorized sale and marketing of the Film from eBay, IMDb, and Vimeo, and again requesting that Koster provide the Next Vietnam Foundation with the footage of the ninety-three Interviews.

63. The next day, April 23, 2021, Mr. Koster responded and agreed to "shut[] down the film website and marketing." Yet, Mr. Koster then relisted the Film for sale at a new eBay link for $15.99 plus shipping of $6.95, with presale shipments to be sent out by May 21, 2021. In the listing, Mr. Koster and Koster Films incorrectly asserted that they were the copyright owners of the Film.

64. Just one day later, Mr. Koster listed the Film through Vimeo not only for DVD pre-order but also streaming for $9.99 per viewing.

65. On April 26, 2021, Ms. M. Nguyen emailed a cease-and-desist letter to Mr. Tooker again requesting that he immediately return all ninety-three Interviews and any related footage of the Film. Mr. Tooker never responded to this request.

66. On May 7, 2021, Ms. M. Nguyen sent further cease and desist letter to Defendants.

132231-00000001/6354198.7

67.    On about March 2, 2022, the Next Vietnam Foundation was forwarded an email from the Victims of Communism ("VOC"), a nonprofit, stating that Koster had contacted VOC about "donating a large film archive [which] … contains hundreds of hours of raw witness interviews pertaining to the Vietnam war and communism, from the South Vietnamese, North Vietnamese, and American perspectives," that Mr. Koster was "interested in working with VOC in the future"  and that "we are in conversations with [Koster] about a couple projects."  On information and belief, this was an attempt by Koster to barter away the Film, Interviews and other material that by rights belong to the Next Vietnam Foundation.  A true and correct copy of the March 2, 2022 email is attached hereto as **Exhibit K** and incorporated herein by reference.

68.    Over approximately three years, the Producers paid the Defendants approximately $300,000.

69.    To date, the Defendants have not provided the Next Vietnam Foundation or the Producers with footage of the ninety-three Interviews or the Film.  The Interviews are, as Mr. Koster himself has stated, a unique historical artifact and a "magnificent library of the history of the South Vietnamese people."  The footage is also literally irreplaceable, because, tragically, not all of the interviewees are still alive.  Indeed, Koster even refused to provide interview footage for use at the funeral of one of the interviewees.

70.    Collectively, Defendants' conduct has resulted in tremendous damage to Plaintiffs.  Among other things, and in addition to the loss of the approximately $300,000, the Producers and the Next Vietnam Foundation had raised money principally from numerous small donors based on Koster's misrepresentations – including that the Film would be distributed for free for educational purposes, and that the rights to the Film would belong to the Vietnamese community in the form of the Next Vietnam Foundation.  Defendants' actions have therefore caused injury to the reputations of the Next Vietnam Foundation and the Producers among the community

132231-00000001/6354198.7

they represent.  Moreover, the Individual Plaintiffs lent their likenesses to what they thought would be a historically-accurate educational Film that would be distributed for free for the benefit of the Vietnamese community.  Instead, they now appear against their will in a Film riddled with historical inaccuracies, that Defendants are attempting to sell for commercial purposes.

71.    Plaintiffs have also come to learn that they are not the first victims of Mr. Koster's fraud.  Mr. Koster and Koster Films LLC had also been hired by Richard Botkin, a marine veteran who served during the Vietnam War, to work on the film Ride the Thunder based on Mr. Botkin's book of the same name.  Mr. Koster, however, still has possession of the original copies of that film.

**FIRST CAUSE OF ACTION**
**(BY MY VAN AGAINST DEFENDANTS)**
**(COPYRIGHT INFRINGEMENT)**

72.    Plaintiffs repeat and reallege all of the foregoing paragraphs as if fully set forth herein.

73.    Plaintiff My Van is the owner of valid, registered copyrights in the films From Saigon to Dien Bien Phu (Registration No. PAu000434758) and Chan Troi Tim (aka The Purple Horizon) (Registration No. PAu000434760).  True and correct copies of those registrations are attached hereto as **Exhibits L** and **M**, and are incorporated herein by reference.

74.    My Van allowed Defendants to use footage from these copyrighted works in the Film, and in trailers Koster created as part of the effort to raise money for the Film, based on the condition, and in reliance on Koster's misrepresentations, that the Film would be distributed for free and that the Film and the rights thereto would belong to the Next Vietnam Foundation.  On information and belief, footage from both Films appeared in trailers that Koster made for the purposes of soliciting donations for the Film, and several minutes of footage from the two My Van films appear in the Film.

75.    Contrary to Defendants' representations, Defendants have failed to assign rights in the Film to the Next Vietnam Foundation, have refused to give the Film to

132231-00000001/6354198.7

the Next Vietnam Foundation, have asserted exclusive copyrights in the Film and all footage contained therein, and have attempted, and, on information and belief, are attempting to charge for the distribution of the film.  Defendants, accordingly, did not have permission to use the footage for the two My Van films in the manner which they did.

76.    Defendants have willfully infringed, and unless enjoined, will continue to infringe My Van's copyrights by knowingly reproducing, displaying, distributing, and utilizing the footage from the two My Van films.

77.    Defendants' wrongful acts have caused, and are causing, injury to the Vietnam Foundation, which injury cannot be adequately compensated by damages alone, and, unless this Court restrains Defendants from further commission of said acts, the Vietnam Foundation will suffer irreparable injury for which it is without an adequate remedy at law.

<u>**SECOND CAUSE OF ACTION**</u>
**(BY THE PRODUCERS AND THE NEXT VIETNAM FOUNDATION AGAINST KOSTER FILMS LLC AND FREDERICK KOSTER)**
**(BREACH OF CONTRACT)**

78.    Plaintiffs repeat and reallege all of the foregoing paragraphs as if fully set forth herein.

79.    Defendants were parties to a contract established by their conduct and mutual representations.  The Vietnam Foundation is a third-party beneficiary of that contract.

80.    Under the contract, in return for the Producers paying Koster, Koster would provide the Next Vietnam Foundation with a completed Film that the Producers and the Next Vietnam Foundation approved the content of, with all related material including the footage of the ninety-three Interviews, and would assign all rights, including copyrights, in the Film and the Interviews to the Next Vietnam Foundation, would create teaching materials to accompany the Film, and would create and maintain a website called "Through Our Eyes," to use exclusively for the Film and related

COMPLAINT

132231-00000001/6354198.7

projects that would be a repository for all of the Interviews of the Vietnamese community members and Vietnam War veterans.

81.    The Producers performed their obligations under the contract.

82.    Koster has failed and refused to perform its obligations under the contract.

83.    The Producers and the Next Vietnam Foundation have suffered loss as a result of Defendants' breach of the contract.

84.    The Producers and the Vietnam Foundation are therefore entitled to a judgment ordering Defendants to pay damages to compensate them for that loss in an amount to be determined at trial, and are also entitled to an injunction ordering Defendants to provide the Film and the Interviews, and to assign all copyrights therein, to the Next Vietnam Foundation.

### THIRD CAUSE OF ACTION
### (BY THE PRODUCERS AGAINST KOSTER FILMS LLC AND FREDERICK KOSTER)
### (FRAUD)

85.    Plaintiffs repeat and reallege all of the foregoing paragraphs as if fully set forth herein.

86.    Koster represented, among other things, (1) that the Next Vietnam Foundation would hold the rights to the Film and the Interviews, (2) that the Film would be distributed for free, (3) that Koster would complete the Film, create related teaching materials, and maintain a website for the Film and as a repository for the Interviews in exchange for $250,000, and (4) that the Producers and the Next Vietnam Foundation would have final approval over the content of the Film.

87.    On information and belief, at least the foregoing representations by Koster were false at the time they were made because Koster had no intention of fulfilling his promises.

88.    On information and belief, Koster knew those representations to be false when he made them and/or Koster made those representations recklessly without

132231-00000001/6354198.7

1    regard for their truth.

2        89.    Koster made those misrepresentations with the intent that the Producers

3    would rely on them.

4        90.    Plaintiffs reasonably and justifiably relied to their detriment on Koster's

5    false representations.

6        91.    As a result of Koster's fraudulent actions, Plaintiffs have been damaged

7    in an amount to be determined at trial.

8        92.    Plaintiffs' reliance on Koster's misrepresentations were a substantial

9    factor in causing their harm.

10       93.    On information and belief, Koster engaged in this conduct willfully, with

11   malice, oppression and fraud.

12                        **FOURTH CAUSE OF ACTION**
                **(BY THE INDIVIDUAL PLAINTIFFS AGAINST DEFENDANTS)**
13                      **(MISAPPROPRIATION OF LIKENESS,**
           **CALIFORNIA CIVIL CODE SECTION 3344 AND COMMON LAW)**
14

15       94.    Plaintiffs repeat and reallege all of the foregoing paragraphs as if fully set

16   forth herein.

17       95.    The Individual Plaintiffs own an enforceable right in their own identities

18   and likenesses.

19       96.    The Individual Plaintiffs agreed to lend their likenesses to the Film based

20   on, among other things, Koster's representations that (1) the Film would be distributed

21   for free to the public, (2) the Next Vietnam Foundation would own the rights to the

22   Film and related materials, and (3) that the Individual Plaintiffs would have approval

23   over how their appearances were used in the Film.

24       97.    In contravention of these representations and the Individual Plaintiffs'

25   reliance thereon, Defendants have used, and continue to use, the Individual Plaintiffs'

26   likenesses without consent, for the commercial purpose of advertising the Film and

27   creating the Film that Defendants have attempted to sell on multiple platforms.

28       98.    The    Individual    Plaintiffs    have    been    harmed    by    Defendants'

COMPLAINT

132231-00000001/6354198.7

misappropriation (including, without limitation, harm to their reputations, personal feelings, and because their work on the Film was uncompensated), which misappropriation was a substantial factor in causing their harm.

99.    In addition, as a result of Defendants' misappropriation, the Individual Plaintiffs have suffered and will continue to suffer irreparable harm through, without limitation, the loss of goodwill, and they have no adequate remedy at law with respect to this injury.  Unless Defendants' misappropriation is enjoined by this Court, the Individual Plaintiffs will continue to suffer irreparable harm.

100.   On information and belief, Defendants engaged in this conduct willfully, with malice, oppression and fraud.

## FIFTH CAUSE OF ACTION
### (BY THE NEXT VIETNAM FOUNDATION AGAINST DEFENDANTS) (CONVERSION)

101.   Plaintiffs repeat and reallege all of the foregoing paragraphs as if fully set forth herein.

102.   The Next Vietnam Foundation owns the Film and all related materials, including the Interviews.

103.   Defendants substantially interfered with the Next Vietnam Foundation's property by wrongfully refusing to release the property to it, by wrongfully failing to return it upon request, and by wrongfully preventing the Next Vietnam Foundation from accessing the property.

104.   The Next Vietnam Foundation did not consent to this conduct.

105.   The Next Vietnam Foundation was harmed as a result.

106.   Defendants' misconduct was a substantial factor in causing the Next Vietnam Foundation's harm.

107.   On information and belief, Defendants engaged in this conduct willfully, with malice, oppression and fraud.

132231-00000001/6354198.7

1
2
3

### SIXTH CAUSE OF ACTION
### (BY THE NEXT VIETNAM FOUNDATION AND THE PRODUCERS AGAINST DEFENDANTS)
### (DECLARATION OF COPYRIGHT INVALIDITY)

4   108.   Plaintiffs repeat and reallege all of the foregoing paragraphs as if fully set
5   forth herein.

6   109.   A substantial controversy exists between the Producers and the Next
7   Vietnam Foundation, on the one hand, and the Defendants, on the other hand,
8   regarding the validity of Defendants' copyright for the Film.

9   110.   The Next Vietnam Foundation is the rightful holder of all copyrights in
10  and to the Film pursuant to the agreement between Koster and the Producers.

11  111.   Plaintiff My Van is the rightful holder of copyrighted footage from the
12  films From Saigon to Dien Bien Phu and Chan Troi Tim that Defendants, on
13  information and belief, included in the Film.  Defendants did not have permission to
14  use that footage in the manner in which they did.

15  112.   Moreover, Plaintiffs made substantial contributions to the Film, including
16  writing the script that was used for the Film, writing interview scripts, selecting music
17  for the Film's soundtrack, substantially revising the Film's narrative and structure, and
18  providing input regarding selecting which interviews and which portions thereof were
19  to be used in the Film and which historical events should be depicted in the Film.

20  113.   Despite the fact that copyrights to the Film belong to the Next Vietnam
21  Foundation, despite the inclusion of footage to which My Van holds valid, registered
22  copyrights, and despite the substantial contributions of Plaintiffs to the Film,
23  Defendants have registered a copyright for the Film wherein they falsely claim that
24  they, and no one else, are authors of the "entire motion picture."

25  114.   On information and belief, Defendants knew this representation to be
26  false because Defendants were aware that (1) Koster's agreement with the Producers
27  contractually obligated Koster to assign all copyrights in the Film to the Next Vietnam

28

132231-00000001/6354198.7

Foundation, (2) the Film included copyrighted footage from My Van, and (3) Plaintiffs made substantial contributions to the authorship of the Film.

115.   The controversy is of sufficient immediacy and reality to warrant declaratory relief because Plaintiffs' assert that the Next Vietnam Foundation is the rightful holder of all copyrights in the Film, and Defendants have obtained a registration for those copyrights.

116.   Plaintiffs therefore seek a judicial determination as to the validity of Defendants' registration, and specifically, seek a declaration that Defendants' copyright registration for the Film is invalid, and directing the Copyright Office to invalidate and/or cancel such registration.

### SEVENTH CAUSE OF ACTION
### (BY THE PRODUCERS AGAINST
### FREDERICK KOSTER AND KOSTER FILMS)
### (UNJUST ENRICHMENT)

117.   Plaintiffs repeat and reallege all of the foregoing paragraphs as if fully set forth herein.

118.   Koster, by its wrongful conduct, acquired $300,000 from the Producers and has used those funds for its own benefit.

119.   As a result of Koster's wrongful conduct, Koster has been enriched at the Producers' expense and accordingly it is against equity and good conscious to permit Koster to retain such enrichment.

120.   As a result of the foregoing, the Producers have suffered substantial harm in an amount to be proven at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter judgment in their favor on each and every claim for relief set forth above and award them relief, including but not limited an order granting:

132231-00000001/6354198.7

A.    Damages according to proof;

B.    A declaration that Defendants Koster Films LLC and Frederick Koster breached their contract with the Producers, that they are contractually required to return the Film and all related materials, including the Interviews, to the Next Vietnam Foundation, and that they are contractually obligated to assign all right, title and interest, including copyrights, in the Film and related material, including the Interviews, to the Next Vietnam Foundation;

C.    A declaration that Defendants' copyright registration for the Film is invalid;

D.    Preliminary and permanent injunctive relief requiring Defendants and their agents, servants and employees, and all persons acting under, in concert with, or for them, to cease their infringement of Plaintiffs' likenesses and copyrights, to return the Film and related materials, including the Interviews, to the Next Vietnam Foundation, to assign all copyrights in and to the Film to the Next Vietnam Foundation, and to invalidate and/or cancel Defendants' copyright registration;

E.    Punitive damages;

F.    Prejudgment and post-judgment interest;

G.    Attorneys' fees;

H.    Costs of suit incurred herein; and

I.    Such other relief as the Court may deem just and proper.

DATED: November 23, 2022          PROCOPIO, CORY, HARGREAVES & SAVITCH LLP


By:  /s/ Jack Shaw
     Jack Shaw
     Jacob K. Poorman
     *Attorneys for Plaintiffs*

COMPLAINT

132231-00000001/6354198.7

1

## **DEMAND FOR A JURY TRIAL**

2

Plaintiffs hereby demand a trial by jury of all issues of triable of right by a jury.

3

4

DATED: November 23, 2022        PROCOPIO, CORY, HARGREAVES &
SAVITCH LLP

5

6

By: */s/ Jack Shaw*
_____
Jack Shaw
Jacob K. Poorman
*Attorneys for Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

132231-00000001/6354198.7